J. A11015/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                     :           PENNSYLVANIA
                    v.                             :
                                                     :
MARTEKE BURGESS,                    :          No. 45 EDA 2014
                                                     :
                    Appellant        :

Appeal from the Judgment of Sentence, December 13, 2013,
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos. CP-51-CR-0003078-2012,
CP-51-CR-0003214-2011, CP-51-CR-0003215-2011

BEFORE: FORD ELLIOTT, P.J.E., OLSON AND WECHT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED AUGUST 26, 2015**

Following a jury trial, Marteke Burgess was convicted of criminal conspiracy, aggravated assault, reckless endangerment, and multiple violations of the Uniform Firearms Act. We affirm.

On January 7, 2011, at approximately 5:56 p.m., while standing on the 3400 block of Helen Street, Anthony McGuigan was shot seven times in the back, thigh, and stomach. (Notes of testimony, 10/9/13 at 30-32, 39.) McGuigan was taken to Temple University Hospital where he was treated for over a month, undergoing several surgeries including a colostomy. Nine cartridge casings, fired from two separate guns, were recovered from the scene.

At approximately 1:00 p.m., on January 10, 2011, gunfire erupted on the 800 block of East Allegheny Avenue. Stephen Ortiz looked down from his seventh floor office window and saw two men shooting. (Notes of testimony, 10/10/13 at 27-28, 30.) He described his office window as "unusually big." (*Id.* at 27.) Ortiz could see that each man had a gun. (*Id.* at 32.) One of the men, who was dressed in black, held his right side and began limping. Appellant, who was wearing a purple high school jacket with gray sleeves, continued firing his weapon. (*Id.*)

Both men fled westbound; the man in black was limping. (*Id.* at 33-34.) The men turned into a vacant lot, and Ortiz lost sight of them. (*Id.* at 34-35.) Ortiz ran outside and flagged down a patrol car; he pointed out the man in the purple jacket who was at a nearby row home at 844 East Hilton Street. (*Id.* at 36.) The police entered the house and found co-defendant Brakeer Newsome lying on the floor bleeding. Upon arrest, appellant and Newsome listed the house as their home address.

During this shooting, two bystanders suffered gunshot graze wounds: 67-year-old Ottis Holloway and 66-year-old Leon Daukas. Twenty fired cartridge casings were recovered from the scene. A microscopic examination showed an exact match between the majority of the casings and the ballistics evidence from where McGuigan had been shot, demonstrating that the same two firearms had been used in both crimes.

Detective Sean Leahy interviewed McGuigan on March 9, 2011, following his release from the hospital; McGuigan's mother and stepfather were in the room during the interview. (Notes of testimony, 10/11/13 at 18-22.) McGuigan stated that just before being shot, he had been approached by "Brak" whom he identified as co-defendant Newsome. (*Id.* at 23-24.) McGuigan explained that "my boys are beefing with Brak and his people." (*Id.* at 24.) "Brak" asked him, "Do you sell out here? . . . [W]ho be selling out here?" (*Id.* at 23.) McGuigan responded, "not me" and claimed he was then shot, but he did not know by whom. (*Id.*)

Two weeks later, on March 23, 2011, Detective Leahy returned to McGuigan's home and re-interviewed him. McGuigan said he had additional information that he had not disclosed because he was afraid and "would rather just deal with it." (*Id.* at 36.) McGuigan revealed that "Brak" had approached him along with "Lava" and "Dre"; "Brak" had a gun and "Lava" had one too." (*Id.* at 34.) He averred that either "Brak" or "Lava" shot him; he was not sure if "Lava" was the gunman but he thought that was the case. (*Id.* at 35.) McGuigan was shown a photo array, pointed to appellant, and stated it might be Lava, which he believed to be spelled "Lavae." (*Id.* at 34-35.) The detective subsequently located a different photograph of appellant, which showed his right forearm; on it, the word "Lava" had been tattooed. (*Id.* at 38.)

Charges were filed against appellant and Newsome in connection with both incidents. On May 23, 2012, the Commonwealth filed a motion to consolidate the charges against appellant from the Helen Street shooting with those arising from the Allegheny Avenue shooting.[1] Following a hearing, the motion was granted.

A joint jury trial commenced on October 9, 2013. McGuigan testified as a hostile witness, claiming the detectives had obtained his statements by hassling him and denying that appellant or Newsome had shot him. (Notes of testimony, 10/9/13 at 34-35.) McGuigan verified that the person he had pointed out to detectives on March 23, 2011, was "Lava" and that "Lava" and appellant were one and the same. (**Id.** at 58-59.) Detective Leahy took the stand to rebut allegations that the police had engaged in any misconduct. The detective testified that McGuigan's prior statements were knowing and voluntary. (Notes of testimony, 10/11/13 at 13-38.)

The jury convicted appellant of criminal conspiracy in connection with the shooting on Helen Street, two counts of aggravated assault, reckless endangerment, and three firearms violations in connection with the shootings of Holloway and Daukas on Allegheny Avenue. On December 13, 2013, appellant was sentenced to an aggregate term of 27 to 54 years'

---

[1] The corresponding charges against Newsome had been previously consolidated.

imprisonment.[2] Appellant filed a post-sentence motion on December 17, 2013; the motion was denied on December 20, 2013. A timely notice of appeal was filed on December 27, 2013. The trial court directed appellant to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A.; appellant did not timely comply. The trial court did not file an opinion as the Honorable Kenneth J. Powell, Jr., has since retired. On July 18, 2014, after this court issued a briefing schedule, appellant's Rule 1925(b) statement was filed.

Appellant presents the following issues for our review:

1. Did not the trial court err in granting the Commonwealth's motion to consolidate CP-51-CR-0003078-2012 (Case 1 - January 7, 2011, 300 Helen Street) with CP-51-CR-0003214-15-2011 (Case 2 - January 10, 2011, 800 East Allegheny Avenue) where: (1) there were no similarities between the cases other than that matching fired shell cases were recovered from each scene; (2) the evidence did not tend to establish the identity of the perpetrator in each case since no gun was ever recovered at either scene and there were multiple shooters involved in each case; (3) conflicting defenses applied in each case; and (4) joinder resulted in prejudicial cumulation of evidence?

2. Was not the evidence insufficient as a matter of law to sustain Appellant's conviction for conspiracy to commit attempted murder beyond a reasonable doubt on Case 1 (CP-51-CR-0003078-2012) where there was no evidence as to any agreement or overt act on the part of Appellant as the complainant,

---

[2] Newsome was also convicted of multiple charges in connection with both shootings and was sentenced to 45½ to 91 years' imprisonment.

Anthony McGuigan, testified that Appellant was not present on the night of the shooting, nor did the complainant ever identify Appellant in any prior statements, thus the Commonwealth failed to prove beyond a reasonable doubt that Appellant was the person referenced as "Lavae?"

3.  Was not the evidence insufficient as a matter of law to sustain Appellant's convictions on Case 2 (CP-51-CR-0003214[-]15-2011) where no witness identified Appellant by face, no weapon was ever recovered, and the cumulative evidence was insufficient to prove Appellant's guilt beyond a reasonable doubt?

4.  Did not the court err as a matter of law and violate the discretionary aspects of sentencing when it imposed a manifestly excessive and unreasonable statutory maximum sentence of 27 to 54 years where: (1) the sentence was well above the aggravated range of the sentencing guidelines and was based on inappropriate reasons; (2) Appellant was a juvenile at the time the alleged crimes were committed; (3) the trial court ignored all mitigating evidence, focusing solely on punishment and retribution; and (4) the trial court concluded, based on no empirical evidence, that Appellant could not be rehabilitated?

Appellant's brief at 4-5.

Preliminarily, we address appellant's failure to file a timely Rule 1925(b) statement. As mentioned, after appellant filed the notice of appeal, the trial court ordered the filing of a statement within 21 days. Appellant did not file an application for an enlargement of time for the filing of the statement with the trial court. *See* Pa.R.A.P. 1925(b)(2). Instead, on

June 27, 2014, appellant filed a "motion to vacate briefing schedule and remand to the court below to transmit a complete set of all notes of testimony to be made part of the certified record." Appellant then filed a concise statement on July 18, 2014.

Appellant's concise statement was untimely filed. Previously, this would have resulted in waiver of appellant's issues. **Commonwealth v. Castillo**, 888 A.2d 775 (Pa. 2005). However, subsequent changes to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and recent case law allow us to review the issues. **See Commonwealth v. Burton**, 973 A.2d 428 (Pa.Super. 2009) (**en banc**) (untimely concise statement amounts to ineffective assistance of counsel **per se** and review of issues is permitted similarly to outright failure to file concise statement under Rule 1925(c)(3)).

The first issue raised involves the joinder of two separate criminal informations for trial.

> Whether or not separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant. Consolidation of separate offenses in a single trial is proper if the evidence of each of them would be admissible in a separate trial for the others and is capable of separation by the jury so that there is no danger of confusion. Pa. R. Crim. P. 1127(A)(1) (now Pa. R. Crim. P. 582(A)(1)(a)). Evidence of distinct crimes is inadmissible solely to demonstrate a defendant's criminal tendencies. Such evidence is admissible, however, to show a common plan, scheme or design embracing commission of multiple crimes or to establish the identity of the perpetrator, so long as

> proof of the crime tends to prove the others. This will be true when there are shared similarities in the details of each crime.

*Commonwealth v. Andrulewicz*, 911 A.2d 162, 168 (Pa.Super. 2006), *appeal denied*, 926 A.2d 972 (Pa. 2007) (citations omitted).

Appellant argues that matching weapons were the only link between the two incidents. We disagree. As the trial court noted in granting the Commonwealth's motion to consolidate "[T]he incidents are three days apart, they are in the similar geographic neighborhood, they have identical ballistics and both defendants have been identified by witnesses in relation to either of them." (Notes of testimony, 6/15/12 at 10-11.)

In this case, evidence of the two crimes was so closely related that proof of one criminal act tends to prove the other. The evidence of the two criminal informations served to establish the identity of appellant. The cartridge casings recovered from both crime scenes matched and demonstrated that they were fired from the same weapon, and this evidence was relevant to the identity of the shooters. We agree with the Commonwealth that appellant's emphasis on the fact that the weapons were never recovered is of no moment. *See Commonwealth v. Rollins*, 580 A.2d 744 (Pa. 1990) (matching cartridges from weapon fired at different times admissible to establish defendant's identity although the gun was never recovered). Moreover, appellant, "Lava," was identified as the second gunman in the Helen Street shooting, and he was also identified in the

East Allegheny shooting as the man in the purple and gray jacket seen firing a gun on Allegheny Avenue before fleeing with co-defendant to the home they shared. Accordingly, we find no abuse of discretion by the trial court in consolidating the two matters. **Commonwealth v. Reid**, 626 A.2d 118 (Pa. 1993) (holding that evidence establishing the defendant used the same gun to commit another murder six days later was admissible to identify him as the perpetrator).

Next, appellant argues that the evidence was insufficient to meet the Commonwealth's burden of establishing he was one of the actors in either case.

We begin our analysis with our standard of review:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where

> the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa.Super. 2013), *appeal denied*, 77 A.3d 636 (Pa. 2013), quoting *Commonwealth v. Norley*, 55 A.3d 526, 531 (Pa.Super. 2012) (citations omitted).

Viewing the evidence in the light most favorable to the Commonwealth, we find McGuigan identified "Lava" and co-defendant Newsome as the two armed men that approached him immediately before he was shot. While this identification was tentative, it was corroborated by photographs the police obtained showing that appellant had the word "LAVA" tattooed on his forearm. Appellant notes that at trial, McGuigan repudiated his prior statements and asserted that appellant and Newsome were the "wrong people." Appellant also argues that McGuigan alleged that one of the detectives who interviewed him had supplied him with the name "Lava." The jury, however, was entitled to discredit his statements and credit Detective Leahy's testimony denying this allegation.

Turning to the Allegheny Avenue shooting, appellant argued, "no witness identified Appellant by face. The only eyewitness testimony was elicited from Stephen Ortiz, who, from seven floors up, was able to discern a

jacket . . ." (Appellant's brief at 31.) He also argues that several people called the police after the shooting and no one provided a description of a person wearing a purple jacket. (*Id.*) Appellant also points to inconsistencies in Ortiz's testimony; again, determinations of credibility are within the realm of the fact-finder. We also agree with the Commonwealth that disputes concerning whether Ortiz had an adequate opportunity to observe the shooting or whether his descriptions matched go to the weight of the evidence. *See Commonwealth v. Bourgeon*, 654 A.2d 555 (Pa.Super. 1994), *appeal denied*, 668 A.2d 1121 (Pa. 1995). Likewise, our function is not to re-evaluate or disturb the court's own credibility determinations. *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 32 A.3d 1275 (Pa. 2011.)

Here, Ortiz flagged down police and pointed to appellant -- the only person in the area who was wearing a distinctive purple jacket with gray sleeves -- and stated, "there he is." (Notes of testimony, 10/10/13 at 32, 37, 39.) Ortiz then identified appellant in the courtroom. (*Id.* at 37.) Ortiz also testified that he observed Newsome limping as the men ran from the area. When appellant was apprehended in front of his house that he shared with Newsome, Newsome was inside suffering from a bullet wound. (*Id.* at 34.) Accordingly, with due consideration of all of the circumstantial evidence presented in the light most favorable to the Commonwealth as verdict

winner, our review of the record confirms there was sufficient evidence to sustain appellant's convictions.

Next, appellant presents a challenge to the discretionary aspects of his sentence. Initially, we note, "[i]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." **Commonwealth v. Tirado**, 870 A.2d 362, 365 (Pa.Super. 2005) (citation omitted). Appellant timely filed a motion to modify his sentence in which he argued that the sentence he received was excessive and based on impermissible bias. As such, we find that appellant's post-sentence motion preserved the claims now raised on appeal.

> A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. **Commonwealth v. Hunter**, 768 A.2d 1136 (Pa.Super.2001)[,] **appeal denied**, 568 Pa. 695, 796 A.2d 979 (2001). When challenging the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. **Commonwealth v. Mouzon**, 571 Pa. 419, 812 A.2d 617 (2002); **Commonwealth v. Tuladziecki**, 513 Pa. 508, 522 A.2d 17 (1987); 42 Pa.C.S.A. § 9781(b); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional**

> cases.'" ***Commonwealth v. Williams***, 386 Pa.Super. 322, 562 A.2d 1385, 1387 (1989) (***en banc***) (emphasis in original).

***Commonwealth v. McNear***, 852 A.2d 401, 407-408 (Pa.Super. 2004).

> To demonstrate that a substantial question exists, "a party must articulate reasons why a particular sentence raises doubts that the trial court did not properly consider [the] general guidelines provided by the legislature." ***Commonwealth v. Mouzon***, 571 Pa. 419, 812 A.2d 617, 622 (2002), quoting, ***Commonwealth v. Koehler***, 558 Pa. 334, 737 A.2d 225, 244 (1999). In ***Mouzon***, our Supreme Court held that allegations of an excessive sentence raise a substantial question where the defendant alleges that the sentence "violates the requirements and goals of the Code and of the application of the guidelines . . . ." ***Id.*** at 627. A bald allegation of excessiveness will not suffice. ***Id.***

***Commonwealth v. Fiascki***, 886 A.2d 261, 263 (Pa.Super. 2005), ***appeal denied***, 897 A.2d 451 (Pa. 2006).

Instantly, appellant has complied with the requirements of Rule 2119(f) by including such a statement in his brief. (Appellant's brief at 17-19.) Therein, he claims that his sentence is manifestly excessive and based on the following inappropriate reasons: "Appellant was a juvenile at the time the alleged crimes were committed; the trial court ignored all mitigating evidence, focusing solely on punishment and retribution; and, finally, the trial court concluded, based on no medical or other evidence, that Appellant could not be rehabilitated." (***Id.*** at 19.) We find appellant has raised substantial questions about his sentence, and we will proceed to review their merits. ***See Commonwealth v. Felmlee***, 828 A.2d 1105,

1107 (Pa.Super. 2003) (*en banc*) (a substantial question is raised where an appellant alleges the sentencing court erred by imposing an aggravated range sentence without consideration of mitigating circumstances); *Commonwealth v. Corley*, 31 A.3d 293, 297 (Pa.Super. 2011) ("An allegation of bias in sentencing implicates the fundamental norms underlying sentencing and hence, we find that it raises a substantial question.").

The applicable standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa.Super. 2006) (citation omitted).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant . . . ." *Id.* Furthermore, "[a] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." *Commonwealth v. Stewart*, 867 A.2d 589, 593 (Pa.Super. 2005) (citation omitted). The sentencing court,

however, must also consider the sentencing guidelines. ***See Fullin***, 892 A.2d at 847.

Instantly, appellant was sentenced to the maximum allowable sentence on all but one charge: 10 to 20 years on conspiracy to commit attempted murder; 5 to 10 years on each aggravated assault charge; 1 to 2 years' on each reckless endangerment charge; 2½ to 5 years on the firearms charge under Section 6108; 2½ to 5 years on the firearms charge at Section 6110.1; and no further penalty imposed on the firearms charge under Section 6106. Each charge was to run consecutively for a total of 27 to 34 years. Appellant had a prior record score of zero as an adult, and a misdemeanor retail theft adjudication as a juvenile. The record demonstrated, however, that appellant had six arrests as a juvenile and five as an adult. The trial court ordered a pre-sentence report and a mental health evaluation. Our supreme court has ruled that where pre-sentence reports exist, the presumption will stand that the sentencing judge was both aware of and appropriately weighed all relevant information contained therein.[3] ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988). Defense counsel also referred to the sentencing guidelines when arguing on appellant's behalf:

> I'm asking Your Honor to consider a guideline sentence. The most serious charge that he was convicted of was the attempted murder. His

---

[3] We note that the certified record does not contain a copy of the pre-sentence report or a Guidelines Sentence Form.

> guideline was a 14/0 so his guidelines are 72 to the statutory limit. I'm asking Your honor to give him a guideline sentence in the middle. Obviously, I would ask on the low end but I know Your Honor is not inclined to do that. I would be asking for 8 to 16 on that and for anything else to run concurrent with that charge.

Notes of testimony, 12/13/13 at 25.

Additionally, when imposing sentence, the court indicated that it understood it was sentencing appellant in the aggravated ranges of the sentencing guidelines and provided its reasoning. (*Id.* at 32.) ***Commonwealth v. Rodda***, 723 A.2d 212 (Pa.Super. 1999) (***en banc***) (court not required to recite numeric range of sentences within the guidelines as long as record shows understanding of range and of court's chosen deviation from range).

Additionally, we find no merit to appellant's argument that the sentence was based on an openly expressed bias. The trial court was in a position to observe appellant's demeanor throughout the proceedings; the court expressed that appellant consistently thumbed his nose at the system.

> There are no other crimes that I can see the Defendant was found guilty of. I passed sentence on this Defendant considering his presentence investigation, his mental health investigation, the arguments of counsel, as well as the circumstances surrounding the Defendant's entire social life, family life, and his patterns of delinquency and crime, which began at an incredibly ripe age and have continued even while incarcerated.
>
> I believe that the aggravated sentence was absolutely necessary considering all the

- 16 -

> circumstances, the boldness of this crime, the demeanor of the Defendant, who seemed to be concerned about nothing, who smiled and laughed throughout his entire trial, who is sociopathic no matter what was said, although a personality disorder can be, in fact, that, does not belong in the streets of Philadelphia.
>
> It is my responsibility to remove him for as long as possible and I have done that. And I believe that it was right, just, and helpful to society, for me to do exactly what I did. And I do it without reluctance and certainly without vengeance.

*Id.*

Although we may not agree with all of the colorful characterizations of appellant utilized by the trial court, it is clear that a reading of the sentencing transcript as a whole does not establish bias on the part of the court. We have no reason to disturb the sentencing court's discretion.

Judgment of sentence affirmed.

Olson, J. concurs in the result.

Wecht, J. files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2015

- 17 -